UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LORI A. HINES,

          Plaintiff,

                                        Civil No. 07-3066-HA

          v.

                                          OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

_____

HAGGERTY, District Judge:

        Plaintiff Lori Hines seeks judicial review of a final decision by the Commissioner of the

Social Security Administration denying plaintiff's application for Disability Insurance Benefits

(DIB) and Supplemental Security Income (SSI) payments.  This court has jurisdiction to review

the Commissioner's decision under 42 U.S.C. § 405(g).  After reviewing the record of this case

and evaluating each party's arguments, this court concludes that the Commissioner's decision

must be reversed and this case remanded for an award of benefits.

1- OPINION AND ORDER

**STANDARDS**

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See* 20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings).  The Listings describe, for each of the major body systems, impairments which qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings.

2- OPINION AND ORDER

*Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC). A person's RFC is the most he or she could do in a work setting despite the total limiting effects of the claimant's impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Social Security Ruling (SSR) 96-8p.

The Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, at the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner

3- OPINION AND ORDER

meets this burden, the claimant must be deemed not disabled for purposes of determining

benefits eligibility.  20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards

and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. §

405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.

Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  The Commissioner's denial of benefits is upheld even

if the evidence is susceptible to more than one rational interpretation, as long as one of the

interpretations supports the decision of the administrative law judge (ALJ).  *Thomas v. Barnhart*,

278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision.  *Tackett*, 180 F.3d at 1098.  The Commissioner, not the reviewing

court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in

instances in which the evidence would support either outcome.  *Benton v. Barnhart*, 331 F.3d

1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the

Commissioner did not apply the proper legal standards in weighing the evidence and making the

decision.  *Reddick*, 157 F.3d at 720-21.

## **BACKGROUND**

The relevant background has been presented thoroughly by the parties and in the ALJ's

decision.  Plaintiff was forty-four years old at the time the ALJ rendered the decision.  Plaintiff

4- OPINION AND ORDER

has a high school diploma.  She has past work experience as an apartment manager, medical

clerk, cellular phone salesperson, and medical insurance clerk.

Plaintiff applied for DIB and SSI on December 29, 2003.  She alleged that her disability

began on March 1, 2001.  This application was denied initially and upon reconsideration.  A

hearing was held on August 5, 2005, at which the ALJ heard testimony from plaintiff, who was

represented by an attorney.  The ALJ held a supplemental telephone hearing on August 10, 2006,

at which a vocational expert (VE) testified.  On September 20, 2006, the ALJ issued a decision

denying plaintiff's application.  This decision became the Commissioner's final decision upon the

Appeals Council's denial of review.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.  Additional

medical facts and background will be addressed as required by the parties' legal arguments.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that

plaintiff had not engaged in SGA since the alleged onset of her disability.  Transcript of Record

(hereinafter "Tr.") 23, Finding 2.

At Step Two, the ALJ found that plaintiff had severe impairments including fibromyalgia

and degenerative disc disease of the lumbar and cervical spine.  Tr. 23, Finding 3.

At Step Three, the ALJ found that plaintiff's impairments, individually and in

combination, did not meet or equal the requirements of a listed impairment.  Tr. 26, Finding 4.

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work.

Tr. 32, Finding 6.  The ALJ so found after determining that plaintiff had the RFC to perform

light work, which includes occasionally lifting and/or carrying twenty pounds, frequently lifting

and/or carrying ten pounds, and walking and standing for approximately six hours each during

the workday.  Tr. 26, Finding 5.  In addition, the ALJ assigned occasional limitations regarding

most postural activities, with frequent limitations regarding balancing.  *Id.*

At Step Five, applying the Medical-Vocational Guidelines as a framework, and based on

testimony from the VE, the ALJ found that plaintiff was able to perform jobs that exist in

significant numbers in the national economy, including laundry folder, surveillance systems

monitor, and parking lot attendant.  Tr. 34, Finding 10.

## DISCUSSION

Plaintiff contends that this court should reverse the Commissioner's final decision and

remand for payment of benefits, or, in the alternative, remand for further consideration of the

evidence because the ALJ improperly rejected the opinions of treating physicians George

Johnston, D.O., and Glen O'Sullivan, M.D.

Doctor Johnston filled out an impairment questionnaire in August 2005.  Doctor

Johnston, a treating physician, opined that plaintiff could sit six hours in an eight-hour day, stand

and/or walk one hour in an eight-hour day, would have to miss more than three days of work a

month, and could occasionally lift and carry only five pounds.  Tr. 505-11.

Doctor O'Sullivan filled out an impairment questionnaire in June 2004.  Doctor

O'Sullivan, a treating physician, opined that plaintiff could sit one hour in an eight-hour day,

stand and/or walk one hour in an eight-hour day, would have to miss more than three days of

work a month, and could occasionally lift and carry only five pounds.  Tr. 450-56.

Mary Ann Westfall, M.D., filled out an impairment questionnaire in June 2004.  Doctor

Westfall, a non-treating physician, opined that plaintiff could sit six hours in an eight-hour day,

stand and/or walk six hours in an eight-hour day, could occasionally lift twenty pounds, and

could frequently lift ten pounds.  Tr. 422-29.  The ALJ relied on the conclusions of Dr. Westfall

and gave less weight to the opinions of Drs. Johnston and O'Sullivan.

Although the testimony of treating physicians deserve a great deal of weight, their

opinions are not conclusive as to either a medical condition or the ultimate issue of disability.

*Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  If uncontradicted, the opinion of a

treating physician can only be rejected for "clear and convincing reasons."  *Rhodes v. Schweiker*,

660 F.2d 722, 723 (9th Cir.1981).  Where the opinion of the claimant's treating physician is

contradicted by another physician, the ALJ must provide "specific, legitimate reasons" for

rejecting the treating source based on "substantial evidence" in the record.  *Murray v. Heckler*,

722 F.2d 499, 502 (9th Cir. 1983).  The question, therefore, is whether the ALJ provided

"specific, legitimate reasons" for rejecting the opinions of Drs. Johnston and O'Sullivan.

### 1.    Dr. Johnston

The ALJ gave "little weight" to Dr. Johnston's assessment of plaintiff's limitations.  Tr.

31.  The two reasons provided by the ALJ for discounting Dr. Johnston's opinion were that: (1)

his opinion was premised "quite heavily on the claimant's subjective reports" and (2) "claimant's

left arm/shoulder complaints . . . were subsequently resolved via the C6 anterior diskectomy."

*Id*.

Discounting a physician's testimony because it is significantly based on a plaintiff's

subjective reports constitutes a specific, legitimate reason for rejecting the opinion of a treating

physician.  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  In *Fair v. Bowen*, the Ninth

Circuit found that the ALJ properly disregarded a physician's opinion that was "'premised to a

large extent upon the claimant's own accounts of his symptoms and limitations.'"  885 F.2d at

605 (quoting the ALJ's decision).  In *Tonapetyan v. Halter*, the Ninth Circuit held that the ALJ

properly rejected the opinion of a physician who "relied only on [the plaintiff's] subjective

complaints and on testing within [the plaintiff's] control."  242 F.3d 1144, 1149 (9th Cir. 2001).

Although an ALJ is entitled to disregard a physician's testimony that is based on

subjective complaints, the record clearly demonstrates substantial objective support for Dr.

Johnston's assessment of plaintiff's limitations.  Between September 2004 and January 2006, Dr.

Johnston saw plaintiff more than a dozen times.  On several occasions, Dr. Johnston noted that

plaintiff's gait was antalgic, observations that supported his diagnosis of hip bursitis.  Tr. 478,

481, 500, 502.  Doctor Johnston mentioned that a rheumatologist, Dr. Edward Tackey, found

eighteen of the eighteen tender points consistent with fibromyalgia, a clinical finding that

supported his diagnosis of fibromyalgia.  Tr. 483.  Doctor Johnston based his diagnosis of

shoulder impingement on localized lumbar tenderness, limited range of motion, diffuse give-way

weakness in the upper extremity, and positive impingement signs.  Tr. 478-79, 489, 493-94.  In

addition, Dr. Johnston had access to plaintiff's full medical history and was aware of several

prior spine surgeries, including a neck fusion in 1995, an intradiscal electrothermal technique in

2001, and an interbody fusion on disks L4-5 in 2003.

Given the substantial objective evidence supporting Dr. Johnston's opinion, the ALJ's

attempts to characterize it as being heavily based on plaintiff's subjective complaints lacks

evidentiary support.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)

(concluding that "an ALJ does not provide clear and convincing reasons for rejecting an

examining physician's opinion by questioning the credibility of the patient's complaints where

the doctor does not discredit those complaints and supports his ultimate opinion with his own

observations").  The court notes that *Ryan* dealt with uncontradicted medical testimony, which requires "clear and convincing reasons" for discounting a treating physician's opinion.  Although Dr. Johnston's opinion is contradicted by that of Dr. Westfall, this court concludes that Dr. Johnston's alleged reliance on plaintiff's subjective complaints does not constitute a "specific, legitimate" reason for rejecting his opinion.  Because Dr. Johnston's disability assessment is supported by his own observations, there is not "substantial evidence" in the record to support the ALJ's first reason for disregarding it.

The ALJ's other stated reason for discounting Dr. Johnston's opinion – that plaintiff's left arm and shoulder complaints were subsequently resolved via the C6 diskectomy performed in November 2005 – is also unsupported by the record.  In June 2005, plaintiff began reporting left shoulder pain to medical professionals.  Tr. 478.  In August 2005, Dr. Johnston opined that plaintiff had significant work-related restrictions, and indicated in an impairment questionnaire that plaintiff had "rotator cuff tendinopathy with impingement," along with five other diagnosed conditions.  Tr. 505.  After Dr. Johnston filled out the impairment questionnaire, a magnetic resonance imaging scan revealed a disc protrusion at C5-6 and neural impingement at the left C6 nerve root.  Tr. 500-01.  In November 2005, plaintiff underwent a diskectomy to fix the disc protrusion.

Two weeks after the diskectomy, plaintiff returned to Dr. Johnston for a follow-up. Doctor Johnston's December 2005 treatment note indicates that plaintiff's "left arm pain [was] resolved since surgery" and that shoulder pain was no longer her major complaint.  Tr. 553.  The ALJ, presumably relying on this treatment note, concluded that plaintiff's left arm and shoulder complaints were resolved by the diskectomy.  Because one of the impairments upon which Dr.

Johnston's August 2005 impairment assessment was based had been resolved by the diskectomy, the ALJ discounted the restrictions assigned to plaintiff in the impairment questionnaire.

While the December 2005 treatment note indicates that plaintiff's condition improved following the diskectomy, plaintiff's subsequent visits to Dr. Johnston undermine the ALJ's finding that plaintiff's neck and shoulder pain were resolved by the procedure.  A month after indicating that the pain in her upper extremities had subsided, plaintiff reported in January 2006 that her neck and arm pain had "improved slightly but [was] still present."  Tr. 551.  Doctor Johnston observed in his treatment note that plaintiff's upper extremity pain was "somewhat better" but not entirely resolved.  *Id.*

Only a partial review of Dr. Johnston's treatment notes supports the ALJ's finding that the diskectomy resolved plaintiff's upper extremity pain.  "In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports."  *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (ALJ's decision to disregard medical testimony not supported by substantial evidence because the ALJ "selectively relied on some entries in [plaintiff's medical records] and ignored the many others that indicated continued, severe impairment").  Viewing the record as a whole, Dr. Johston's treatment notes indicate that plaintiff's neck and shoulder pain temporarily went away following the procedure and then returned at a slightly reduced level.  Because the ALJ's stated reason for discounting Dr. Johnston's opinion is discredited by a thorough review of the record, this court concludes the ALJ did not provide a legitimate reason for discounting Dr. Johnston's opinion.

10- OPINION AND ORDER

This court also notes that plaintiff's "rotator cuff tendinopathy with impingement" was one of six medical conditions listed by Dr. Johnston in the August 2005 impairment questionnaire.  Even if plaintiff's condition slightly improved following the diskectomy, there were other medical bases for Dr. Johnston's opinion that plaintiff could only sit six hours in an eight-hour day, stand or walk one hour in an eight-hour day, and would miss more than three days of work a month.

This court concludes that neither of the ALJ's stated reasons for giving little weight to Dr. Johnston's opinion is supported by "substantial evidence" in the record.  To the contrary, the record indicates that Dr. Johnston's opinion was not heavily based on plaintiff's subjective complaints and that the diskectomy did not resolve plaintiff's upper extremity pain.

**2.    Dr. O'Sullivan**

The ALJ also gave "less weight" to the opinion of Dr. O'Sullivan than that given to the opinion of the non-treating agency physician.  The three reasons provided by the ALJ for discounting Dr. O'Sullivan's opinion were that: (1) he "relied quite heavily on the subjective report of symptoms and limitations" provided by plaintiff; (2) his opinion did not reflect that plaintiff's "condition and functioning steadily improved following her May 2003 anterior/posterior fusion"; and (3) that "the course of treatment pursued by Dr. O'Sullivan post-surgery has not been consistent with what one would expect if the claimant were truly disabled." Tr. 31.

The first reason given by the ALJ – that Dr. O'Sullivan's opinion was significantly based on plaintiff's subjective reports – is not supported by the record.  The record demonstrates that the opinion of Dr. O'Sullivan (like that of Dr. Johnston) was significantly based on objective

evidence, including medical testing, the physician's own observations, and plaintiff's extensive medical history.

The second reason given by the ALJ for giving less weight to Dr. O'Sullivan's opinion is also unpersuasive.  Defendant argues that "[o]ngoing improvements and unremarkable physical examinations are not consistent with [Dr. O'Sullivan's finding of] disability."  Def.'s Br. at 8.  In support of this argument, defendant highlights the following facts:  In February 2003, plaintiff underwent anterior-posterior lumbar fusion surgery on disks L4-5.  In the months following the surgery, Dr. O'Sullivan noted that plaintiff was making "good headway."  Tr. 335-36.  In August 2003, plaintiff reported that she was doing fifty abdominal crunches a day and doing a "lot of gardening, bending, and twisting."  Tr. 332.  In October 2003, plaintiff reported that her condition was "better" and Dr. O'Sullivan indicated that she was "progressing well."  Tr. 332.  In December 2003, the findings upon examination were relatively benign, yet Dr. O'Sullivan indicated that he could not see her returning to work.  Tr. 331.

Contradictions between a doctor's opinion of a claimant's abilities and their clinical notes and observations "is a clear and convincing reason for not relying on the doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  A thorough review of the record, however, undermines the ALJ's argument.

While Dr. O'Sullivan reported that plaintiff engaged in some activities – including abdominal crunches and gardening – that seem inconsistent with a finding of disability, Dr. O'Sullivan expressed concerns that plaintiff was "overdoing it with physical therapy" and was going to injure herself.  Tr. 332.  Doctor O'Sullivan recommended that plaintiff "cut back the

12- OPINION AND ORDER

amount of activities she [had] been performing" and noted that plaintiff's physical activities had

caused a "flare-up of her back pain that can go up to 8 out of 10 in severity." *Id*.

This court does not find that Dr. O'Sullivan's treatment notes are inconsistent with his

later assessment of disability.  In fact, the cautious tone adopted by Dr. O'Sullivan throughout his

treatment notes is entirely consistent with his later opinion.  Although plaintiff experienced

episodes of increased mobility and functionality following the fusion surgery, the treatment

notes suggest that Dr. O'Sullivan was much less optimistic about plaintiff's improvement than

plaintiff herself.  Considering Dr. O'Sullivan's observations that plaintiff was "overdoing it" and

should "cut back" her activities, this court concludes that Dr. O'Sullivan's later disability

assessment is neither surprising nor inconsistent.

The third reason given by the ALJ for discounting Dr. O'Sullivan's opinion – that the

course of treatment post-fusion surgery was not consistent with disability – also lacks

evidentiary support.  The court notes that Dr. O'Sullivan performed the anterior diskectomy and

interbody fusion on plaintiff, despite warning plaintiff about the risk of "neurological injury,

bleeding, infection, persistent pain, and possible need for further surgery."  Tr. 336.

Furthermore, Dr. O'Sullivan saw plaintiff nearly ten times in the fourteen month period

following the surgery.  Tr. 330-36.  Given the seriousness of the procedure and the number of

post-surgery visits, there is no evidence supporting the ALJ's suggestion that Dr. O'Sullivan's

course of treatment was inconsistent with a finding of disability.

Because the ALJ did not provide adequate reasons for discounting the opinions of Drs.

Johnston and O'Sullivan, their opinions are credited as a matter of law.  *See Lester v. Chater*, 81

F.3d 821, 834 (9th Cir. 1996).  Both Dr. Johnston and Dr. O'Sullivan concluded that plaintiff

13- OPINION AND ORDER

could not work an eight-hour shift and would have to miss more than three days of work a month, restrictions that preclude gainful full-time employment. Accordingly, this court concludes that plaintiff is disabled and, therefore, entitled to an award of benefits.

## CONCLUSION

This court concludes that there are no outstanding issues in this matter that require resolution. The final decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the proper calculation and award of DIB and SSI payments to plaintiff Lori Hines.

IT IS SO ORDERED.

DATED this   30   day of March, 2009.


    /s/ ANCER L. HAGGERTY   
ANCER L. HAGGERTY
United States District Judge

14- OPINION AND ORDER